**SOUTHWESTERN BELL TELEPHONE COMPANY, (Plaintiff) Appellant,**

v.

**Frank KROUPA, (Defendant) Respondent.**

No. 31878.

St. Louis Court of Appeals.

Missouri.

April 19, 1966.

Motion for Rehearing or to Transfer to Supreme Court Denied May 23, 1966.

Application to Transfer Denied July 11, 1966.

Samuel Richeson, Dearing, Richeson, Weier & Roberts, Hillsboro, John Mohler and Leo E. Eickhoff, Jr., Kansas City, for appellant.

Earl R. Blackwell, Blackwell & Blackwell, Hillsboro, for respondent.

RUDDY, Judge.

This is a condemnation action by plaintiff, Southwestern Bell Telephone Company, a corporation, to acquire and appropriate a right-of-way and easement across the land owned by defendant. Plaintiff and

defendant filed exceptions to the award of the Commissioners and upon a jury trial defendant was awarded the sum of $7500. Plaintiff appealed from the ensuing judgment.

The easement acquired in this condemnation action was a right-of-way to construct, operate, maintain, inspect, replace and remove an underground communications system consisting of underground cables, wires, conduits, surface testing terminals, markers and other necessary appurtenances upon, over and under a strip of land one rod in width (16½ feet) across the land of the defendant. In connection therewith plaintiff acquired (a) the right of ingress and egress across the land of defendant by reasonable route to and from said right-of-way; (b) the right to place such surface markers and surface testing materials as may be necessary on said strip; (c) the right to clear and keep cleared all trees, roots, brush and other obstructions from the surface and sub-surface of said strip as may be necessary for the construction, operation and maintenance of said communications system; and (d) the right to install temporary gates and fences crossing said strip, which fences shall be repaired and restored to their former condition following construction. The following rights were reserved to the defendant: the right to freely use and enjoy the right-of-way insofar as the exercise thereof did not endanger or interfere with the construction, operation and maintenance of said communications system or create a hazard thereto; the right to cultivate and grow crops; and the right to establish roadways and utility lines across said easement, except that no building or structures shall be erected within the easement and right-of-way without the written consent of the plaintiff.

There is some confusion in the record regarding directions. As pointed out by plaintiff, defendant's original tract was not laid out in a true north and south direction but is rectangular, lying lengthwise northwest to southeast. However, we shall refer to the property as if it was laid out in a true north and south direction.

Defendant owned 29.44 acres altogether which was divided by Interstate Highway 55 in Jefferson County, Missouri. Twelve and nine-tenths acres of his land lay east of the right-of-way of Interstate 55 and it is this portion of defendant's land on which the cable is located. As heretofore stated, the easement is 16½ feet in width and extended 809.45 feet along the western boundary of defendant's 12⁹⁄₁₀ acre tract, which was immediately adjacent to the right-of-way of Interstate Highway 55. The easement then extended eastwardly an additional 742.35 feet along the southern boundary of defendant's land. The southern boundary of defendant's land abutted the northern boundary of a subdivision known as Arnold Terrace. The total length of the easement was 1551.80 feet with a total area of ⁹⁄₁₀ of an acre. The cable is buried underground at a depth of 40 inches and when it was laid plaintiff tore up the earth and left a ridge across defendant's land. However, plaintiff's engineer said the property will be restored to the owner's satisfaction and will be in the same condition as it was before the cable was laid. Plaintiff planned to level off the ground and plant grass seed. Markers will be put in the fence line to let anybody interested know that a cable is underground. One marker will be at the northwest corner of defendant's property, one at the corner where the easement turns eastwardly from Highway 55 and another one will be placed at Highway 141, which highway is at the southeast corner of defendant's land. These markers are 25 foot creosoted poles with signs stating "there is a cable buried here." Other matter is contained on the signs. In order to control possible washing of the land, plaintiff placed erosion plugs in the ditches where the water was likely to run and its engineers said these plugs will throw the water to the side and prevent any erosion from continuing.

On the 12⁹⁄₁₀ acres involved is defendant's home, which he described as an old build-

ing, and another old farm building. The land is about ½ mile from the Arnold Bank, about 300 feet from the Meramec River and approximately 1500 feet from the Fox School House and, as heretofore pointed out, part of the property fronts on Highway 141. The property is about 250 feet from Interstate Highway 61–67.

At the time defendant bought the property and for some time thereafter he used it for general farming and truck gardening purposes. However, he has not farmed the property for the past 12 to 15 years. At the time of trial he said he was just holding the property "for speculation or subdivision, for motels or commercial * * *." The property was described as gently rolling, with no bluffs and slopes toward the north, which we understand to mean the high part of the property is at the south end of defendant's land.

Defendant's witnesses testified that the land was suitable for subdivision and commercial purposes, pointing out that a subdivision known as Arnold Terrace is located adjacent to defendant's land along its southern boundary where the cable is located. One of defendant's witnesses said that if the property is developed into a subdivision, a street could be put along the line where the telephone cable is now laid. Another witness testified that it could be used for a motel building, shopping center or service station. However, he thought the cable line might interfere with the sewerage system. One of plaintiff's appraisers said that the property could be used for a number of purposes. Defendant's evidence showed that there were subdivisions surrounding his property and that water and electricity were available.

One of the principal complaints of the defendant, concurred in by his witnesses, was that the laying of the cable prevented him from grading along the top ridge of his property at the south boundary, which was adjacent to the Arnold Terrace Subdivision. Defendant said that the Arnold Terrace Subdivision was 8 to 10 feet lower than his

property at the southern boundary and that it was his intention to "grade it off where his line abuts Arnold Terrace." He said that with the cable there he could not grade it as he planned.

▮ In one of the points relied on by plaintiff it contends that the court erred in giving and reading to the jury defendant's Instruction D–1. It makes four specific complaints against this instruction, only one of which we need discuss. In this one complaint it contends that the instruction permits double damages. We think it is susceptible of such meaning.

The pertinent parts of Instruction D–1 read as follows:

"The Court instructs the jury that in assessing the just compensation for damages, if any, to be paid to the defendant, you should allow defendant the difference between the fair market value of all of his property before and its fair market value after the appropriation by plaintiff of a right of way and easement over and across defendant's property.

"In determining the compensation for damages, if any, to which defendant is entitled, the jury should ascertain the amount and reasonable market value of the land actually taken and the damages, or decrease, if any, in the value of the remainder of defendant's property as a whole resulting from the taking of a portion of defendant's property for the right of way and easement. The total amount found on account of *these items* less the amount of any special benefits, if any, will be the amount you should allow the defendant." (Emphasis ours.)

The above instruction, given in the instant case, is similar in all material respects to an instruction given in the case of State ex rel. State Highway Commission v. Berridge, et al., Mo.App., 166 S.W.2d 791, 1. c. 792. In that case the court held:

"A reading of the above instruction will clearly show that it was erroneous

in that it provided for double damages. Such an instruction has been condemned by our courts."

While there was no discussion or comment by the court why it thought the instruction provided for double damages, the error in that direction is plainly obvious to us.

Paragraph 1 of the instant instruction authorizes the jury to allow defendant the difference between the fair market value of all of his property before and its fair market value after the appropriation by plaintiff of the right-of-way. If defendant would have stopped there and not included the second paragraph, the instruction would have been proper. However, in the second paragraph the jury is told that in determining the compensation for damages it should ascertain the reasonable market value of the land actually taken and the decrease, if any, in value of the remainder of defendant's property, and then it was told in a separate sentence within that paragraph, that "[t]he total amount found on account of *these items* less the amount of any special benefits, if any, will be the amount you should allow the defendant." (Emphasis ours.) This last sentence can be taken to mean, by a jury of ordinary laymen, that it can allow the amount of damages found by it under paragraph 1, plus the reasonable *market value of the land actually taken for* right-of-way purposes, plus the decrease in the value of the remainder of defendant's property and the total of these amounts, as the instruction states, "will be the amount you should allow the defendant." Obviously, this is not the correct measure of damages and if so understood and followed by the jury would result in the allowance of double damages. We think the instruction is susceptible of such meaning by the jury. It is significant to note that paragraph 2 of the instruction under review is not offered as an alternative method for the computation of the amount of damages the jury should allow, to the method provided in paragraph 1. The harmful words in paragraph 2 are those we have italicized, name-

ly, "these items." Certainly, these words are misleading and can be understood to mean all of the items of compensation defined in paragraphs 1 and 2.

Paragraph 1 has been referred to in the cases as a "measure of damages" instruction, whereas, paragraph 2 has been referred to as an "admeasurement of damages" instruction. Frankly, there is no need for a defendant in a condemnation action to give both of these instructions. One or the other of the instructions should have been given and not both. However, in future condemnation trials, where only part of property is taken, MAI No. 9.02 will be used. It is interesting to note that in cases decided subsequent to the case of State ex rel. State Highway Commission v. Berridge, supra, containing instructions using the "admeasurement of damages" form, instead of using the words "these items," they use the words "these two items" and have numbered the two elements recoverable under the "admeasurement of damages" instruction as "first" and "second." See State ex rel. State Highway Commission v. Williams, Mo.App., 263 S.W.2d 444, and State ex rel. State Highway Commission v. Goodson, 365 Mo. 260, 281 S.W.2d 858.

The measure of damages instruction should correctly set out the proper standard of measuring damages and should not be susceptible of misunderstanding.

■ Adding to the confusion and the erroneous meaning Instruction D–1 presents is the total lack of evidence in the record to support paragraph 2 of said instruction. Although plaintiff makes no complaint about this failure of proof, we think the giving of paragraph 2 under the circumstances compounds the error we have found to exist in the language of the instruction. There is not one bit of evidence in the record from which the jury could ascertain "the amount and reasonable market value of the land actually taken * * * for the right of way and easement." There is no evidence to show the damages or de-

crease, if any, in the value of the remainder of defendant's property. All of the evidence as to value pertains to the fair market value of all of defendant's property before the appropriation by plaintiff of a right-of-way and easement and its fair market value after the appropriation. In the absence of evidence to support paragraph 2 of the instruction, the jury was thereby given a roving commission to speculate and surmise as to the items of damage recoverable under said paragraph 2. Likewise, the jury was told that from "the total amount found" on account of the items of compensation recoverable it should deduct the amount "of any special benefits." Here again, the record is devoid of any evidence showing any special benefits accruing to defendant. While, of course, the inclusion in paragraph 2 of the item regarding the amount of any special benefits was detrimental to the defendant and not harmful to the plaintiff, we point it out in order to show that the instruction was not only erroneous in the area complained of by plaintiff, but was erroneous in other areas and that paragraph 2 of said instruction fails to find evidentiary support in the record.

Defendant in his defense of Instruction D–1 contends that the court in the Berridge case, supra, held that double damage was permitted because the instruction included the right to recover for the cost of a fence and that this could not be cured by remittitur as the trial court had attempted to do. We have pointed out that the instruction in the Berridge case, supra, was similar in all material respects to the instruction in the instant case. In the Berridge case the instruction also permitted recovery for the cost of building and maintaining a fence. When the trial court overruled the motion for new trial, the record showed the following order: "By the order of the court, the defendants herein remit $50.00 for item of fence in this cause." (166 S.W.2d 1. c. 792.) Thereafter, the plaintiffs took exception to the action of the court in overruling the motion for new trial and in accepting a remittitur of $50. On appeal, the appellate court, after holding the instruction was erroneous because it provided for double damages, in a separate paragraph of the opinion, when commenting on the trial court's action in accepting the remittitur of $50, said: "The error in that instruction could not be cured by the court's entering a remittitur. It would be impossible for the trial court to tell how much of the damages the jury allowed for erecting and keeping repaired the fence in question." (166 S.W.2d 1. c. 792.) This statement by the court had nothing to do with its finding that the instruction provided for double damages. The statement made was merely the reviewing court's finding that the trial court erred in granting the remittitur of $50.

Because of the error of the trial court in giving Instruction D–1, the judgment is reversed and the cause is remanded for a new trial.

WOLFE, P. J., and McGHEE, Special Judge, concur.

## OPINION ON MOTION FOR REHEARING OR IN THE ALTERNATIVE TO TRANSFER CAUSE TO THE SUPREME COURT

PER CURIAM.

Defendant in his motion for rehearing has pointed out that we recently approved an instruction in the case of Southwestern Bell Telephone Company v. Webb, Mo. App., 393 S.W.2d 117, which was identical in all respects to defendant's Instruction D–1. This case was not cited by defendant in his brief. The opinion in the Webb case did not recite the instruction. We have examined the transcript in that case and have found the questioned instruction is similar in all pertinent respects to defendant's Instruction D–1 in the instant case. The opinion in the Webb case did hold that the instruction properly hypothesized the issue of damages and did not authorize an award of double damages. In that respect

the opinion in the Webb case is in error and is in conflict with what we have said in this opinion. That part of the opinion in the Webb case that holds the questioned instruction properly hypothesized the issue of damages and did not authorize an award of double damages should not be followed.

Defendant's motion for rehearing, or in the alternative to transfer cause to the Supreme Court of Missouri is overruled.